STATE of Missouri, Respondent,

v.

Harold E. STARKS, Appellant.

No. 55107.

Supreme Court of Missouri,
Division No. 1.

Oct. 12, 1970.

Motion for Rehearing or to Transfer to Court
En Banc Denied Nov. 9, 1970.

**250**

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Shaw, Howlett & Gerard, Charles M. Shaw, Clayton, for appellant.

HOUSER, Commissioner.

Harold E. Starks, convicted by a jury of tampering with a motor vehicle and sentenced to imprisonment in the county jail for one year, appeals for a reversal of the judgment of conviction and a new trial on three grounds.

### I.

Appellant claims error in admitting in evidence testimony relating to a pellet gun and a .38 calibre pistol. A police officer testified that he observed Starks lying on the ground underneath the motor vehicle in question; that he told Starks to get out from under the automobile; that he saw the pellet gun, which closely resembles a pistol, stuck in Starks' belt behind his back, and saw a .38 calibre pistol lying on top of a left-handed brown jersey glove which in turn was lying on top of an adjacent car. Starks admitted that he owned the pellet gun but denied knowledge of the .38 calibre pistol. A police officer testified that when Starks was asked whose guns they were Starks said "They are mine." Starks complains that the admission of this evidence constituted prejudicial admission of evidence of other offenses, namely, carrying concealed weapons; that this evidence was wholly immaterial on a charge of tampering and without probative force to prove the facts in issue; that the facts in this case do not fit into any of the exceptions noted in State v. Hancock, Mo.Sup., 451 S.W.2d 6, allowing admission in evidence of other crimes; that the State's motive was to show that Starks was not a law-abiding citizen and to import evil in the possession of the guns.

■ The court did not err in admitting this testimony. The police officer testified that the pellet gun was "plainly visible" and not concealed or hidden from view, and that the .38 calibre pistol was observed lying on top of the adjacent automobile. Concealment is an essential element of the offense of carrying a concealed weapon, State v. Tate, Mo.Sup., 416 S.W.2d 103[1], and the test of concealment is whether the weapon is so carried as not to be discernible by ordinary observation. State v. Bordeaux, Mo.Sup., 337 S.W.2d 47, 49. The evidence was not inadmissible on the ground that it disclosed the commission of the crime of carrying a concealed weapon or weapons. Nor was it inadmissible on the ground of irrelevancy or immateriality. Although it is not claimed or established that the guns were used in the commission of the crime of tampering, the testimony with respect to the guns was admissible as tending to show the circumstances attending the arrest of the defend-

ant, State v. McGee, 336 Mo. 1082, 83 S. W.2d 98[19], including the possibility that he contemplated resisting arrest, and that he was armed when arrested. State v. Hart, 309 Mo. 77, 274 S.W. 385, 388[8]. Also, it was relevant on the question of intent. Criminal intent is an element of the crime of tampering with a motor vehicle, State v. McLarty, Mo., 414 S.W.2d 315, 318. Criminal intent was denied by Starks. If he was carrying a pellet gun and had in his immediate possession a .38 calibre pistol (which the evidence showed was loaded and cocked), these facts would have some probative value in determining the question whether Starks had the intent to tamper with the motor vehicle or commit some other crime in connection with the vehicle. State v. Lindner, Mo.Sup., 282 S.W.2d 547, 552[8].

## II.

Appellant claims that his constitutional right to remain silent was violated by an answer given by the arresting officer to a question by the prosecuting attorney which raised an inference that appellant must have had something further to say "but that he was merely withholding it for legal reasons." By this claim appellant seeks to invoke the protection of the rule of State v. Dowling, 348 Mo. 589, 154 S. W.2d 749, that the silence of a person under arrest who is accused of and is being interrogated about a crime, or in whose presence statements about a crime are made, may not be shown in evidence, because he is under no duty to speak. The most recent application of the rule was in State v. Stuart, Mo.Sup., 456 S.W.2d 19. In addition to the Dowling case the cases of State v. Vainikos, Mo.Sup., 366 S.W.2d 423; State v. Phelps, Mo.Sup., 384 S.W.2d 616, and State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, deal with this subject. Appellant also relies upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Bel-Ridge City Police Officer James Turner testified that he went to the lot where the owner of a new Corvette had parked his car and there observed a person (defendant Starks) lying on the ground with his right arm extended from beneath the car. He advised the subject to stand up and place his hands on top of the car. Starks did so, and in the process a glove which Starks had been wearing on his right hand "went over the car." Starks asked for a cigarette. The officer observed the pistol in Starks' belt and told him to keep his hands on the roof of the car or he would shoot him. The officer radioed for assistance and waited for the arrival of other officers. When the assist car arrived the officers checked inside the Corvette. They found another person lying on the front seat and observed that the window was broken out of the door and that there was glass in the car and found scratch marks around the ignition switch. The man found inside the car was ordered to get out and place his hands on the top of the roof. As he did so he tossed a screwdriver into an adjacent field. Officer Turner then discovered the pistol on the top of a Ford automobile which was parked 3 feet distant from the Corvette. The pistol was lying on top of a glove. The suspects were then searched, handcuffed and advised of their rights. Officer Turner read from a card which stated: "You do not have to make any statement at this time and have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to have an attorney present at the time of interrogation, and if you cannot afford an attorney one will be appointed for you." Starks said he understood his rights as read to him; that he did not wish an attorney and that he would make a statement. The officer asked him about the guns. Starks stated that both the guns were his and that he was taking them to St. Louis to pawn them. When asked how the one got cocked he said he did not know. At that point in the direct examination of Officer Turner the prosecutor asked the question, "Did he say anything further?," to which the officer

responded, "No sir, that is all he would say." On the basis of the Dowling case counsel for Starks asked that the jury be discharged and a mistrial declared because the answer implied that defendant was invoking his right to remain silent. On cross-examination of Officer Turner, Starks' counsel developed these facts: that prior to the inquiry about the guns the officer had asked him what he was doing there on the parking lot and where he had come from; that Starks stated to the officer that he had come from Van Buren, Missouri; that he had hitchhiked and that the person with him was "just a friend." Apparently that was the extent of the inquiry. The officer specifically denied that he or the other officers asked Starks whether he had tampered with this car or was trying to steal it; or whether he had broken the window, jimmied the ignition, touched the Corvette, loosened bolts, wires, etc. underneath the car, etc., and testified that Starks was merely held awaiting arrival of the St. Louis County police. When a county police officer arrived he placed the two men under arrest and took them to county police headquarters without further inquiry of them.

■ Miranda lays down the mandate that at the trial the prosecution may not use the fact that the defendant "stood mute" or claimed his privilege to remain silent *in the face of accusation.* As stated in State v. Battles, supra, 212 S.W.2d l.c. 757, "All of the cases where we have held that it was error to prove that the arrested person remained silent were cases where the persons were asked about the alleged crime or where some one made a statement about the alleged crime in the presence of the accused." (The same holds true in all of the cases subsequent to Battles.) In Battles the appellant was not asked about the crime nor was anything said about the crime in his presence by anyone, as a result of which the admission in evidence of this question and answer was upheld: "Q. Did the defendant make any statement there about anything? A. No, sir."

■ In the case before us the officer did not accuse Starks of the crime of tampering with the automobile and Starks was not questioned with reference thereto. The inquiry related solely to where he had come from, what he was doing there, the guns and why the pistol was cocked. Starks did not stand mute in the face of an accusation because there was no accusation, and he did not stand mute in any event for he was not silent. On the contrary, he forthrightly answered all questions asked about his origin, his associate, why he was there, and he accounted for his possession of and intended use of the guns. He frankly and openly answered that he did not know why the pistol was cocked. These statements were made voluntarily, with full knowledge and understanding of his rights. The testimony of the police officer giving Starks' answers to these questions elicited exculpatory, not incriminatory, matter, except for the admission as to ownership of the guns. There was no failure to volunteer an exculpatory statement as in State v. Stuart, supra; no refusal to answer questions as in State v. Phelps, supra; no refusal to make a statement as in State v. Vainikos, supra. After Starks made these voluntary statements no effort was made by the police officers to confront him with any accusations of guilt of tampering with the motor vehicle or the incriminating evidence of the broken window, scratches around the ignition switch, etc. This is not a case where an accused clams up in the face of a charge of guilt, made under circumstances calling imperatively for an admission or denial. Starks did not "say anything further"—that was all he had to say—because the subject was dropped; the inquiry ended; no further questions were asked; the subject of tampering was not broached, and both the officer and Starks fell silent while awaiting the arrival of the other police officers. Under the circumstances and in the context in which it was uttered, no inference of guilt of the crime of tampering could reasonably have been drawn from the officer's answer

"That is all he would say." Compare State v. Flanagan, Tenn., 443 S.W.2d 25, 26.

### III.

Appellant claims that the verdict was insufficient and indefinite and that the court erred in accepting it and sentencing him thereupon. The verdict assessed punishment at imprisonment in the county jail "for a term not exceeding one year." The court accepted the verdict over objections of appellant's counsel that it was not in proper form and was indefinite and, after overruling the motion for new trial (which raised the point that the punishment assessed by the verdict was indeterminate), imposed upon appellant a jail sentence "for a period of One (1) Year." Appellant claims that it was incumbent upon the court to call the attention of the jury to the uncertainty of its verdict and require the jury to put it in proper form or, with their consent, to amend the verdict in their presence, but that the court refused to do so and therefore the verdict will not support the judgment; that appellant was thereby deprived of his right to have the jury fix his punishment and that for this reason he is entitled to a new trial.

The punishment assessed by the jury was indeterminate. An indeterminate sentence is not recognized in this State. Punishment may not be administered in that form and manner. Criminal Rule 27.-03, V.A.M.R., and § 546.440, RSMo 1969, V.A.M.S., provide that where the jury assesses a punishment not authorized by law the court shall assess and declare the punishment and render judgment accordingly. The court followed the rule and statute and the action of the court is approved.

No error appearing, the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HOLMAN and BARDGETT, JJ., concur.

SEILER, P. J., concurs in result.